# FIFTH DIVISION
## MCFADDEN, C. J.,
## RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 16, 2021**

# In the Court of Appeals of Georgia

A21A0506. DOUGLAS R. WILSON et al v. REDMOND CONSTRUCTION, INC.

A21A0507. REDMOND CONSTRUCTION, INC. v. DOUGLAS R. WILSON et al.

RICKMAN, Presiding Judge.

Douglas Wilson and Denise Wilson sued Redmond Construction, Inc. ("Redmond") for breach of contract and the negligent construction of a driveway. Redmond moved for partial summary judgment on the Wilsons' claims for attorney fees and litigation expenses. The trial court granted the motion, and the Wilsons appeal this order in Case No. A21A0506. Redmond cross-appeals in Case No. A21A0507, arguing that the trial court erred when, in an earlier order, it denied Redmond's motion to exclude the testimony of the Wilsons' expert witness. We affirm the grant of summary judgment on the Wilsons' claims for attorney fees in

Case No. A21A0506, and we affirm in part, vacate in part, and remand in Case No. A21A0507.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Hunsucker v. Belford*, 304 Ga. App. 200, 200 (695 SE2d 405) (2010).

So viewed, the Wilsons contracted Redmond to construct a new home and its driveway, and Redmond hired a subcontractor to construct the driveway. The Wilsons moved into the home after it was completed and soon noticed that there were cracks, pitting, and holes in the driveway and that the driveway was not leveled, which caused standing water. The Wilsons notified Redmond about the driveway's problems, and Redmond ultimately replaced landings near the driveway that resolved an issue with standing water, but other issues remained. The Wilsons continued to request that Redmond fix the driveway. Redmond sent someone to pressure wash the driveway in order to identify the alleged weak and deteriorating areas, but the

2

Wilsons alleged that caused more damage. Redmond proposed filling the driveway's cracks with silicone or epoxy and adding a new top coat of concrete refinishing to resurface and strengthen the driveway, but the Wilsons rejected these proposals.

The Wilsons hired a civil engineer to inspect the driveway's concrete, and the engineer identified several alleged defects in the driveway's construction and recommended completely replacing the driveway. Redmond also retained its own expert, who prepared a report and recommended grinding away the driveway's superficial paste and replacing it with a self-leveling concrete dressing to resolve the leveling issues and cure the aesthetic issues. The Wilsons sued Redmond, alleging negligent construction and breach of contract. The Wilsons also alleged that they were entitled to attorney fees and costs because there was no bona fide dispute as to Redmond's liability and Redmond caused the Wilsons unnecessary trouble and expense, acted in bad faith, and were stubbornly litigious. Redmond filed a notice of non-party fault under OCGA § 51-12-33,[1] alleging that Redmond's subcontractor was wholly or partially at fault with respect to the Wilsons' claims.

---

[1] "The statutory scheme [of OCGA § 51-12-33] is designed to apportion damages among 'all persons or entities who contributed to the alleged injury or damages'—even persons who are not and could not be made parties to the lawsuit." (Citation and punctuation omitted.) *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323, 337 (III) (801 SE2d 24) (2017).

Redmond then filed a motion for partial summary judgment on the Wilsons' claims for attorney fees under OCGA § 13-6-11, arguing that: (1) because bona fide controversies existed as to both liability and damages, it was entitled to summary judgment as to any claims that it was stubbornly litigious or caused the Wilsons unnecessary trouble and expense; and (2) there was no evidence that it acted in bath faith. In addition to introducing the depositions of the parties and their experts, Redmond also introduced an estimate from its expert, who estimated that his proposed solution would cost approximately $12,250.00 as well as the Wilsons' responses to interrogatories wherein they indicated that the total cost to repair the driveway in accordance with their proposal would cost $58,392.40. The trial court granted Redmond's motion for partial summary judgment, finding that: (1) the record showed that there was a controversy over causation and/or apportionment involving Redmond's subcontractor and there was a controversy related to the appropriate remedy and cost of repair; and (2) that the Wilsons proffered no evidence of a dishonest purpose, moral obliquity, conscious doing of wrong or ill will on the part of Redmond to support a finding of bad faith. The Wilsons directly appealed.

The Wilsons argue that the trial court erred in granting summary judgment on their claims for OCGA § 13-6-11 attorney fees.[2] OCGA § 13-6-11 "authorizes the finder of fact to make an award of attorney fees and other expenses of litigation where (1) the plaintiff specially pleads and prays for such an award, and (2) the finder of fact finds that the defendant acted in bad faith in the underlying transaction or that, after the transaction on which the cause of action is predicated, the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense." *Horton v. Dennis*, 325 Ga. App. 212, 216 (750 SE2d 493) (2013).

1. The Wilsons contend that the trial court erred in granting summary judgment on their claims for attorney fees and expenses of litigation because the evidence showed that Redmond acted in bad faith, or, in the alternative, at least created a genuine issue of material fact on this issue. We disagree.

"Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in how [a]

---

[2] Under OCGA § 13-6-11, "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

defendant acted in his dealing with the plaintiff." (Citation and punctuation omitted.) *City of Gainesville v. Waters*, 258 Ga. App. 555, 559 (4) (574 SE2d 638) (2002). "Moreover, we have noted that there may be bad faith in carrying out the provisions of the contract sufficient to support the award." (Citation and punctuation omitted.) *Oglethorpe Power Corp. v. Estate of Forrister*, 332 Ga. App. 693, 706 (2) (e) (774 SE2d 755) (2015). "Bad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive. Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (Citation and punctuation omitted.) *MARTA v. Mitchell*, 289 Ga. App. 1, 4 (659 SE2d 605) (2007).

Here, the Wilsons contend that Redmond's bad faith is shown by its stubborn litigiousness, denial of liability, and its alleged intention not to repair or replace the driveway. But, as noted above, bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. And in that regard, Douglas Wilson testified in his deposition that Redmond's owner and the Wilsons discussed the driveway's issues, that Redmond replaced landings near the driveway which fixed a leveling issue that caused standing water, and that although

6

the Wilsons testified that Redmond "didn't see it as a problem," Redmond's owner nonetheless visited the house and ultimately "whether to appease us or what, he started talking about a top coat." Additionally, Redmond's owner testified that he sent someone to pressure wash the driveway in order to check its surface, and he also testified that the Wilsons dismissed Redmond's plan to fill in the driveway's cracks with silicone. Thus, the record shows that Redmond attempted to address the alleged problems with the driveway, which supports the trial court's finding that there was no evidence of bad faith in the underlying transaction. See *C & H Dev., LLC v. Franklin County*, 294 Ga. App. 792, 795 (2) (670 SE2d 491) (2008); *Garrett v. Women's Health Care of Gwinnett, P.C.*, 243 Ga. App 53, 55 (1) (532 SE2d 164) (2000) (affirming grant of summary judgment to defendant on plaintiff's OCGA § 13-6-11 claim for bad faith attorney fees in breach of contract and fraud case and finding that there was no evidence that the defendant "acted through ill will or furtive design with regard to the performance of the contract" where the defendant relied upon the calculations of a corporate accountant in calculating bonus payments due under a contract and where the accountant "clearly believed that his method of calculation was appropriate, and there [was] no evidence that [the defendant] had reason to believe otherwise"); see also *M & H Constr. Co. v. North Fulton Dev. Corp.*, 238 Ga.

App. 713, 715 (1) (519 SE2d 287) (1999) (affirming trial court's grant of j.n.o.v. on OCGA § 13-6-11 attorney fees claim in breach of contract case where most of the evidence relied upon by the plaintiff arose from the financial disputes between the parties and at most amounted to a failure to pay a debt, which was insufficient to support an award of attorney fees).

2. The Wilsons also argue that the trial court erred in granting the motion for summary judgment on the issue of attorney fees because the evidence in the record indicated that a bona fide controversy did not exist, and in the alternative, there were genuine issues of material fact remaining as to whether a bona fide controversy existed. We disagree.

When the "basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, an award under OCGA § 13-6-11 is authorized where the evidence reveals that no bona fide controversy or genuine dispute existed—whether of law or fact, on liability or amount of damages, or on any comparable issue." (Citation and punctuation omitted.) *Horton*, 325 Ga. App. at 216. "A mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness." (Citation and punctuation omitted.) Id.

Here, the Wilsons argue that "the record evidence reflects that there was no bona fide controversy that there were problems with the defective driveway" and that forcing them to resort to filing their lawsuit in the absence of a bona fide controversy caused them unnecessary trouble and expense entitling them to an award of attorney fees under OCGA § 13-6-11. The Wilsons contend that both parties' expert witnesses testified "consistent with the [Wilsons'] ongoing complaints that the subject driveway was defective." But the parties presented conflicting evidence on the nature of the damage to the driveway, the required repairs, the costs of repairs, and whether Redmond or its subcontractor was liable. Additionally, it is undisputed that Redmond attempted to make some repairs to the driveway, some of which the Wilsons accepted and some of which they rejected. Based on the record in this case, the trial court was authorized to conclude that a bona fide controversy existed between the parties, thereby precluding an attorney fees award under OCGA § 13-6-11 for stubborn litigiousness or causing unnecessary trouble and expense. See *Rivers v. South Auction & Realty*, 351 Ga. App. 179, 185 (4) (a) (830 SE2d 636) (2019) (affirming denial of OCGA § 13-6-11 attorney fees based on stubborn litigiousness, causing unnecessary trouble and expense, and bad faith in a case involving the cancelled closing of a home sale where the defendants and plaintiff presented conflicting evidence regarding the

9

nature of damages and where it was undisputed that one of the defendants attempted to make repairs on the home and extended the closing date to avoid cancellation); *C & H Dev., LLC*, 294 Ga. App. at 795 (2) (affirming grant of summary judgment to the defendant where, in the absence of bad faith, there was not "any evidence" to support the plaintiff's OCGA § 13-6-11 attorney fees claim when a bona fide controversy existed between the parties) (citation and punctuation omitted).

*Case No. A21A0507*

In this cross-appeal, Redmond contends that the trial court erred in denying its motion to exclude the testimony of the Wilsons' expert witness. In its motion, Redmond argued, among other things, that the expert's testimony that improper jointing caused shrinkage cracking was not reliable and that the Wilsons' expert's testimony that there were "probably" "clay-type soils" underneath the driveway that caused a drainage problem had unreliable methodology.

Under OCGA § 24-7-702 (b), "the testimony of a qualified expert is admissible if (1) it is 'based upon sufficient facts or data'; (2) it is 'the product of reliable principles and methods'; and (3) the expert witness 'has applied the principles and methods reliably to the facts of the case.'" *Emory Univ. v. Willcox*, 355 Ga. App. 542, 542 (1) (844 SE2d 889) (2020) (quoting OCGA § 24-7-702 (b)). "Under OCGA §

10

24-7-702, it is the role of the trial court to act as a gatekeeper of expert testimony." (Citation and punctuation omitted.) Id. at 543 (1). "In this role, the trial court 'assesses both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony.'" (Citation and punctuation omitted.) Id. In doing this, the trial court considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LEd 2d 469) (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. While there is inevitably some overlap among the basic requirements — qualification, reliability, and helpfulness — they remain distinct concepts and the courts must take care not to conflate them.

(Citation and punctuation omitted.) Id. "In making this assessment, however, the trial court may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not — in its view — particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury." (Citation and punctuation omitted) Id. "Whether expert testimony ought to be admitted under OCGA § 24-7-702 is a question committed to the sound discretion of the trial court.

11

We will not disturb the trial court's determination absent a manifest abuse of discretion." (Citation and punctuation omitted.) *Allen v. CFYC Constr., LLC*, 354 Ga. App. 890, 892 (1) (842 SE2d 297) (2020).

3. Redmond argues that the trial court did not consider whether the Wilsons' expert's causation opinion met the criteria set forth in OCGA § 24-7-702 or in *Daubert*. We agree.

> [W]hen a party offers expert testimony and the opposing party raises a *Daubert* challenge, the trial court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. . . . *Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury. As a gatekeeper the court *must* do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

(Citation and punctuation omitted; emphasis supplied.) *McClain v. Metabolife Intl., Inc.*, 401 F3d 1233, 1237 (II) (11th Cir. 2005)).[3] "The trial court has broad discretion

---

[3] Under OCGA § 24-7-702 (f),

[i]t is the intent of the legislature that, in all civil proceedings, the courts

in deciding how to assess the reliability of expert testimony." *Smith v. CSX Transp., Inc.*, 343 Ga. App. 508, 512 (1) (b) (806 SE2d 890) (2017). Id. "This discretion affords the trial court considerable leeway in deciding which tests or factors to use to assess the reliability of an expert's methodology." (Citation and punctuation omitted.) Id.

Here, the trial court's ruling addressed the reliability of the following opinions of the Wilsons' expert: (1) there was improper jointing in the driveway, (2) the necessary joint spacing in standard residential driveways, (3) the cracks in the Wilsons' driveway were defects and the driveway needed to be replaced, (4) the Wilsons' driveway likely had a drainage issue due to clay-type soils, and (5) uneven or poorly compacted soils underneath the Wilsons' driveway can lead to a differential settlement or enhanced thermal restraint and can lead to future cracking. But the trial court did not address Redmond's motion to exclude the Wilsons' expert's opinion

---

of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993); *General Electric Co. v. Joiner*, 522 U. S. 136 (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

that the improper joint spacing caused the driveway's cracking. Accordingly, the trial court abused its discretion by failing to act as the gatekeeper on the Wilsons' expert's testimony that the improper joint spacing caused the driveway's cracking, and we vacate in part and remand for the trial court to perform its gatekeeping function and to analyze the Wilsons' expert's testimony on this issue under OCGA § 24-7-702 and *Daubert*. See *An v. Active Pest Control South, Inc.*, 313 Ga. App. 110, 111 (720 SE2d 222) (2011) (vacating an award of summary judgment and remanding for the trial court to rule on motions to exclude the opinions of expert witnesses, which had not been ruled upon).

4. Redmond next argues that the trial court abused its discretion by failing to consider whether the Wilsons' expert employed a reliable methodology to conclude that clay needed to be removed from the Wilsons' driveway site and replaced with two feet of sand. We disagree.

> Generally, reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.

14

(Citation and punctuation omitted.) *Cash v. LG Electronics, Inc.*, 342 Ga. App. 735, 737 (1) (804 SE2d 713) (2017). "This is not an exhaustive list of factors, and courts may consider them in a 'flexible' manner." (Citation omitted.) Id. "The trial court may not exclude an otherwise sufficient expert 'simply because it believes that the opinion is not—in its view—particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury.'" (Citation omitted.) Id.

Here, the Wilsons' expert testified in his deposition that there was a drainage issue caused by "clay-type soils" under the driveway and that Redmond should have replaced the clay with two feet of sand. The Wilsons' expert further testified that he knew that clay was present under the driveway because the report prepared by Redmond's expert, which he reviewed, referenced clay underneath the driveway and that the clay was probably in the original soil underneath the driveway and that clay would naturally exist in the area where the driveway was built. In its order denying Redmond's motion, the trial court found that "the methodology by which [the Wilsons' expert] reache[d] his conclusions appear[ed] to this [C]ourt to be sufficiently reliable to survive this motion . . . [the Wilsons' expert] detailed the bases for his opinions as they related to the factual circumstances in the case, including but not limited to: his opinion that . . . the driveway had a drainage issue due to its 'clay-

15

type soils' under it[.]" So, the Wilsons' expert explained his methodology, the court reviewed it and found it sufficient, and we conclude that the trial court's order adequately demonstrates that the trial court performed its role as gatekeeper as to this opinion. See *Georgia Dept. of Transp. v. Miller*, 300 Ga. App. 857, 863 (2) (c) (686 SE2d 455) (2009); *CSX Transp., Inc. v. McDowell*, 294 Ga. App. 871, 873 (1) (a) (670 SE2d 543) (2008).

Additionally, any contentions that the Wilsons' expert misread Redmond's expert's report and drew erroneous conclusions go to the weight, rather than the admissibility of the evidence. See *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F3d 1333, 1345 (II) (C) (11th Cir. 2003) (the identification of a flaw in generally reliable scientific evidence is the role of cross-examination and any such inadequacy goes to the weight, rather than the admissibility of the evidence); *Old Republic Nat. Title Ins. Co. v. RM Kids, LLC*, 337 Ga. App 638, 646-647 (4) (788 SE2d 542) (2016) (affirming trial court's order denying motion to exclude expert testimony allegedly not based on reliable data or recognized methodology where the expert was properly qualified and the facts relied upon were within the bounds of evidence; questions about whether there was sufficient knowledge upon which to base an opinion went to the weight and credibility of the testimony, not its admissibility); *Emory Univ.*, 355

16

Ga. App. at 544 (1) ("[A] trial court's gatekeeper role under *Daubert* is not intended to supplant the adversarial system or the role of the jury. Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (quoting *Quiet Technology DC-8*, 326 F3d at 1341 (II) (A) (punctuation omitted)). So, Redmond has not shown that the trial court abused its discretion in denying its motion to exclude this opinion evidence on this basis, and we affirm the trial court's ruling on this issue.

*Judgment in Case No. A21A0506 affirmed. Judgment in Case No. A21A0507 affirmed in part, vacated in part, and remanded. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*